May it please the court. My name is Daniel Drake. I'm a lawyer from Phoenix, Arizona, and I was appointed to represent Mr. Raboy after the briefs were filed and the matter was set for oral argument. So you'll see a different name on the pleadings. What I want to start with is the fact that I want to save two minutes for rebuttal. So this is a de novo review matter of an out-of-court identification, and the question is whether it was suggested. I would ask the court to turn to page 17 of the opening brief and look at the photographs that are depicted there as I go through some of the descriptions. Teller Ortiz at the Federal Schools Credit Union described the individual that robbed him as having long, curly hair. Raul Sanchez, a teller at the Bank of America, indicated that he focused on the face. There was a dyed mustache that seemed to be out of place by the individual's age, but he really focused on the face. Another teller who was in the bank, Teller Gordon, said that there was long hair that was pulled back. The Chase Bank, which was robbed on April 3, had two individuals who were testified at trial. One, Encinas Miller, was a teller, and she said that the robber had a ponytail. The other witness from that bank, Teller Mejia, also identified a ponytail, and she was successful in picking out the defendant's picture in the lineup when she saw it in January of 2010. All these robberies were in 2009. And the final one was acquitted conduct, but at the Chase Bank – I'm sorry, not acquitted, a hung jury. At the Chase Bank on February 10, Teller Lascano was robbed, and he identified the individual who committed the robberies having a long ponytail. It looked like it might have been a wig or something of that. That's what he identified. And the process used to assemble the photo spread is, what I would suggest, not necessarily random. What it does is the agent puts into a computer system certain factors. In this particular case, the age of the individual, the race of the individual, certain other things, whether glasses were worn or not worn. And then the computer searches the database and spits out individuals who have been identified as having these features. Then the agent takes a number of those photographs and puts them together to make the spread. I suggest to you that the photo spread was suggestive because, first, Teller Lascano from the Chase Bank robbery on February 10 identified a defendant, but the jury was unpersuaded, at least in that testimony, and hung up on that count. Second, the teller from the Bank of America on March 5th, Teller Gordon, picked out the defendant in the photo spread but was unable to do so in court. On this record, I suggest to you there was a substantial likelihood of misidentification. And what happens is that people see what they want to see and they hear what they want to hear. Unfortunately, in this particular case, once they had chosen the defendant from the photo spread because he is the only one who appears to have his hair pulled back and he visibly has part of a ponytail on his right shoulder, that's on page 17 of the government's opening brief, or sorry, the prosecution's. Ginsburg. The picture right above your client is remarkably similar to him. It has hair that could be seen as a ponytail. I was struck by those two being very alike. I would agree with you, Your Honor, that they are rather similar. What I will say to you is that the individual who is above number 5, he's in the number 2 position, you can see the hair sticking out on the sides. It appears to be shorter. It doesn't appear to be quite as pulled back or quite as tight at the front of the head. And that's what I would, and there is no visible ponytail, and so I think the visible ponytail and the fact that it's more tightly pulled would suggest to a viewer, if you're looking for somebody with a ponytail, this is the guy. You know, if there had been no spreadsheet at all in this case, there was considerable testimony from people who had the opportunity to watch the person for some considerable period of time, and then to identify them at honor. That's correct, Your Honor. There were tellers who were shown the surveillance video to get ready for trial. They had things like that. But I suggest to you that that standing alone does not show that those identifications that they made were, in fact, reliable. Let me start with the teller Encinas Miller. She was at the Chase Bank on April 3rd. She was a merchant teller and was behind a bulletproof glass. Unfortunately, she was robbed about three weeks prior to the robbery on April 3rd. And as she said at one point during her testimony, she wasn't sure. She couldn't remember whether this was the first robbery or the second one. She says that on page 378 of the transcript. She talked about being confused and wanted to see her statement before she got into the details of what she had done. And she didn't remember the video, seeing those at page 368, and wasn't sure what the robber was saying because she was confused. That's at 371. And so I suggest to you that she comes into court rather confused about what's gone on, and she identifies the individual at the defense table. There were other problems with these other interviews, and I would point out, too, that some of the other cases that have been cited in the matter suggest some of the reasons why this case is distinguishable, I think. For example, in Faulkner, Faulkner was a case where the individual passed counterfeit money orders, and not only was his handwriting identified and fingerprints identified on the counterfeit money orders, but apparently he left behind a fake identification document that not only had his picture but his thumbprint and his handwriting. And I think that pretty well tied him in to show that the identification was reliable. Another one is Barrett. And in the Barrett case, Mr. Barrett was unfortunate enough to have his girlfriend testify, and she identified him in the surveillance photos and said basically that's my boyfriend that's in that picture there. And then she explained in some detail how he was gone on the day of the robbery almost all day and that she had a starter gun that looked just like the one in the surveillance photos and things of that sort, and that tends to show the reliability of the matter. We don't have all of that here. And so I suggest to you that the lineup that was shown put in the minds of the tellers the information that they were going to see the defendant, that he had a ponytail, and that's the way it went. And unfortunately, I think that deprived Mr. Brayboy of his due process rights. I'm saving time for rebuttal. Thank you. Thank you. Good morning. Joan Rufinoff, District of Arizona, on behalf of the United States. Your Honors, the photo spread in this case was not impermissibly suggestive, but even if it was, both the out-of-court and the in-court identifications were admissible because they were reliable under the Neal v. Biggers factors. And in any event, there was overwhelming evidence that the defendant was the individual that committed these bank robberies. That overwhelming evidence consists of DNA evidence that was found at each of the three robberies, that DNA evidence matched among the robberies and matched the defendant. The defendant's DNA was found on the hoax bomb parts at the Desert Schools credit union in addition to the teller counter at that credit union. The defendant's DNA was found on the hoax bomb parts at the Bank of America robbery, and the defendant's DNA was found on the checkbook cover that he dropped as he was leaving the Chase Bank after that robbery. In addition, there was a search conducted of the defendant's residence, and found in that search were shirts that were similar to those depicted in the surveillance videos from each of the robberies and the still photographs. In addition, you had the two-way radios and scanners that were found, a robbery note that read, Bomb, Big Bills, No Die, No GPS, No Alarms or Else, a loaded Silver Ruger revolver with a black rubber grip, which Teller and Sinus Miller identified as being very similar to the gun that was shown to her by the robber in the Chase Bank robbery, and additional ammunition, two other revolvers, and cash. The government submits that, or in addition, the Bank of America tellers, although they've been mentioned by counsel here, those, those, the identifications made by those tellers were not challenged in the opening brief, so that evidence stands as unchallenged. Viewed altogether, there was overwhelming evidence that, in fact, this defendant was the individual who robbed all three of those banks. And if the Court, if the Court wants, I can go through the Neal v. Biggers factors with the Court. If not, I'll sit down and wrestle the case. Do you think that the photo spread was too suggestive? No, I don't, Your Honor. And the reason being that in looking at particularly photos 2 and 5, they are, as the Court noted, they are strikingly similar. And this Court in the Carbajal case. Are they strikingly similar? Do you think that the number 2 shows a ponytail? It doesn't show a ponytail outright, but it looks like he's got some kind of hair behind his ear, if you look closely. But I'd submit to the Court that as a district court found, you can't say that he doesn't have a ponytail because of the full-on photograph. He was facing front. There very well could be a ponytail back there, particularly because he has the slicked-back hairstyle. Does 5 show a ponytail, do you think? 5 shows a little bit of hair coming over his shoulder, yes. But I would submit to the Court that the cases of Carbajal and Nash both support the government's position that the mere variances in the photographs is not sufficient to find them suggestive. Thank you. You have a minute, if you want, Roberto, a little over a minute. I did want to respond to a couple of matters, Your Honor. And I'll do so very briefly. At the time of trial, the prosecution didn't think they had an overwhelming case. The prosecutor began her rebuttal arguments at page 706 of the transcript, pointing out that teller after teller had come in and identified the defendant and said it was him. She concluded her remarks with that same phrase at page 711. As far as the individuals, whether it was just three tellers or more people that had made identifications, I believe the defendant's opening brief referenced many of the witnesses and was not meant to be exclusive to those three individuals in terms of that point. It did not challenge the identifications only as to them. It cited them as examples. And that's the time I have. Any other questions? Thank you, Justice. The case, Judge, will be submitted.
judges: Fletcher, Reinhardt, Tashima